FILED IN CHAMBERS
U.S.D.C. - Atlanta

FEB 15 2017

James N. Hatten, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVIDE M. CARBONE,

    Plaintiff

v.

CABLE NEWS NETWORK, INC.,

    Defendant

CIVIL ACTION NO.
1:16-CV-1720-ODE

ORDER

This defamation case is before the Court on Defendant Cable News Network, Inc.'s ("CNN") Motion to Strike Pursuant to OCGA § 9-11-11.1 or, in the Alternative, to Dismiss Plaintiff's Complaint Pursuant to F.R.Civ.P. 12(b)(6) [Doc. 5]. Plaintiff Davide M. Carbone ("Plaintiff") has responded in opposition [Doc. 14] and CNN has replied [Doc. 19]. Also before the Court is the Brief of Amici Curiae Georgia Press Association, Georgia First Amendment Foundation, The Atlanta Journal-Constitution, WAGA Fox 5, and the Motion Picture Association of America, Inc. in Support of the Constitutionality of O.C.G.A. § 9-11-11.1, Its Applicability in Federal Court and Retroactivity [Doc. 20-1], to which Plaintiff has responded in opposition [Doc. 21] and Amici have replied [Doc. 23]. Additionally before the Court is Plaintiff's Rule 56(d) Motion for Discovery to Respond to Defendant's Anti-SLAPP Motion [Doc. 9], to which CNN has responded in opposition [Doc. 11] and Plaintiff has replied [Doc. 13]. For the reasons set forth below, CNN's motion to strike or alternatively to dismiss is DENIED.

I.  BACKGROUND

Plaintiff is the former Chief Executive Officer ("CEO") of St. Mary's Medical Center located in West Palm Beach, Florida [Compl., Doc. 1 at 5-6]. On May 26, 2016, he filed this defamation action against CNN for its publication of "a series of false and defamatory news reports, articles, and social media posts beginning on June 1, 2015" and available to the public to this day [Id. at 1]. He has alleged that CNN published a total of twenty-five such reports relating to the infant mortality rate for open-heart surgery at St. Mary's [Id.]. CNN's reports alleged that this mortality rate was three times the national average; Plaintiff alleges that CNN "intentionally manipulated statistics to fabricate its claim" [Id. at 24].

CNN's reports intermittently included Plaintiff's name and picture in connection with statements from St. Mary's. CNN also apparently sent a reporter to his home, "purportedly to obtain comment" and instead "ambushed" Plaintiff and his wife "in front of their home early in the morning" [Id. at 46]. It then reported that "[a]fter St. Mary's repeatedly denied requests for interviews, CNN approached Davide Carbone, the CEO of St. Mary's at his home. He shut the garage door without commenting" [Doc. 14-1 at 5]. Plaintiff further alleges that "at all relevant times and prior to publication of the series, it was well known to CNN that members of the public and the medical community in Florida recognized [Plaintiff] as the Chief Executive Officer of St. Mary's and as the individual ultimately responsible for the oversight and administration of the hospital program" [Compl., Doc. 1 at 49-50]. Plaintiff asserts that because of the CNN series he was forced to resign as CEO of St.

Mary's and has yet to secure other employment; he has also allegedly received "multiple vile and hateful telephone calls" [Id. at 50-52].

After Plaintiff filed his Complaint, CNN moved to strike it on the basis of Georgia's anti-SLAPP statute, see O.C.G.A. § 9-11-11.1, or, in the alternative, to dismiss for failure to state a claim [Doc. 5]. The Court permitted an Amici Curiae brief [Doc. 27] in support of the application of Georgia's anti-SLAPP provision to this case [Docs. 20, 20-1]. Were this Court to determine that the anti-SLAPP provision applies, Plaintiff has requested leave to conduct discovery into CNN's alleged actual malice pursuant to the statute [Doc. 9].

## II. MOTION TO STRIKE/APPLICABILITY OF ANTI-SLAPP

CNN first seeks to strike Plaintiff's defamation claim on the basis of Georgia's anti-SLAPP statute [Doc. 5]. This provision applies to cases against "a person or entity arising from an act . . . which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." O.C.G.A. § 9-11-11.1(b)(1). If applicable, the statute allows the protected "person or entity" to move to strike the claim, "unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim." Id. Generally, discovery is halted until the Court rules on the motion to strike, except "that if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual

malice is relevant to the court's determination." Id. § 9-11-11.1(b)(2).

Plaintiff opposes CNN's motion on three grounds: (1) Georgia's anti-SLAPP regime is unconstitutional pursuant to the Seventh Amendment to the United States Constitution; (2) the statute is a procedural device inapplicable in federal court; and (3) CNN impermissibly seeks retroactive protection from the statute [Doc. 14 at 8-20]. Finding the second argument persuasive, the Court need not address the other two grounds for denying CNN's motion to strike.

### A. Legal Standard

"It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law." Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357 (11th Cir. 2014) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). In striking down a different provision of Section 9-11-11.1, the United States Court of Appeals for the Eleventh Circuit elucidated the Supreme Court's test for substance versus procedure.

"'Under the Hanna test, when the federal law sought to be applied is a congressional statute or Federal Rule of Civil Procedure, the district court must first decide whether the statute is sufficiently broad to control the issue before the Court.'" Id. at 1357-58 (quoting Hanna, 380 U.S. at 465). "'If the federal procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law.'" Id. at 1358 (quoting Hanna, 380 U.S. at 465). Essentially, if the federal rule and the state rule overlap and conflict such that both cannot be applied harmoniously, then the

4

Court considers the validity of the federal rule. See <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 398 (2010) (citing <u>Burlington N. R.R. Co. v. Woods</u>, 480 U.S. 1 (1987)).

"A federal rule applies in the face of a conflicting state rule . . . only if the federal rule comports with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution." <u>Royalty Network</u>, 756 F.3d at 1358 (citing <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427 n.7 (1996)). Only if the "federal rule is not sufficiently broad to cover the issue or does not directly conflict with the state law [should] the district court . . . then proceed to the second prong of the <u>Hanna</u> test, which requires the district court to apply <u>Erie</u> and its progeny to determine 'whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.'" <u>Id.</u> (quoting <u>Burke v. Smith</u>, 252 F.3d 1260, 1265 (11th Cir. 2001)).

**B.  Discussion**

The first question for the Court is thus whether a federal rule answers the question in dispute, namely the necessary pleading standard for the Plaintiff to maintain his case at this stage; one certainly does. Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). The standard "calls for enough fact to

5

raise a reasonable expectation that discovery will reveal evidence" of the claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). It is not necessary for a complaint to set out all the facts in detail, but a plaintiff has to at least allege "enough factual matter (taken as true) to suggest" the existence of the required elements of the claim. Id.; see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007).

Not only does Rule 12(b)(6) address itself to the pleading standard, it directly conflicts with Georgia's anti-SLAPP statute. The statute essentially creates a Rule 12(b)(6) "plus" standard for cases with a First Amendment nexus. Like Rule 12(b)(6), Section 9-11-11.1(b)(1) allows a defendant to move to strike or dismiss a claim for relief at this early stage in the proceedings. Also like Rule 12(b)(6), upon the defendant's motion, Section 9-11-11.1(b)(1) requires a showing by the plaintiff that a basic pleading standard has been met. The conflict arises in that Rule 12(b)(6) requires "plausibility" on the face of the complaint, see Iqbal, 556 U.S. at 678, while Section 9-11-11.1(b)(1) requires a probability of prevailing.

CNN argues that the probability standard at issue "merely supplements" the federal plausibility standard [see Doc. 19 at 5], but imposing an additional requirement on the plaintiff at this stage is precisely where the issue lies. The Supreme Court has been clear that "[a]sking for plausib[ility] . . does not impose a probability requirement at the pleading stage" "[a]nd, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v.

6

Rhodes, 416 U.S. 232 (1974)). By its very definition, therefore, the Rule 12(b)(6) plausibility requirement not only conflicts, but also cannot coexist with Section 9-11-11.1(b)(1)'s probability requirement.

Thus, the Court turns to the second question it must answer, whether Rule 12(b)(6) comports with the Rules Enabling Act and the United States Constitution.[1] The Rule passes muster and thus applies if it "'really regulate[s] procedure'" by "govern[ing] only 'the manner and the means' by which the litigants' rights are 'enforced[.]'" Shady Grove, 559 U.S. at 407 (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941); Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 446 (1946)). The Supreme Court notes that it has "rejected every statutory challenge to a Federal Rule that has come before [it]," id., and Rule 12(b)(6) should be no different. Pleading standards relate only to how a litigant may bring his claims to court and bear not at all on the substance of those rights or their enforcement. Rule 12(b)(6) thus clears the second step in the Hanna test and applies here instead of Georgia's anti-SLAPP statute.

In reaching its decision, the Court is wading into a circuit split. See Travelers Cas. Ins. Co. v. Hirsh, 831 F.3d 1179, 1183 (9th Cir. 2016) (Kozinski, J., concurring). CNN argues that Georgia's revised anti-SLAPP statute mirrors in all material respects those of California, Maine, Oregon, and Louisiana, which the First, Fifth, and Ninth Circuits have found valid in federal court [Doc. 19

---

[1] Although neither party disputes that it does [see Doc. 19 at 5 n.1], nevertheless the Court considers the question for purposes of a complete analysis.

at 5-6]. The Court variously takes issue with each of these precedents.

For example, the Ninth Circuit case adopting California's anti-SLAPP statute determined that there was no direct conflict with the federal rule because a litigant bringing an unsuccessful motion to strike could subsequently "remain[] free to bring a Rule 12 motion to dismiss[.]" See Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972 (9th Cir. 1999). After this decision, however, the Supreme Court reiterated that the proper standard under Hanna is not whether a state and federal law may potentially be applied in succession, but whether a federal law already addresses the question of the proper pleading standard. See Shady Grove, 559 U.S. at 398. Furthermore, in recent years, Judge Kozinksi and several of his colleagues have challenged the wisdom of the Ninth Circuit's continued tolerance for anti-SLAPP statutes gives that their "probability" standard "directly conflicts with Federal Rule 12, which provides a one-size-fits-all test for evaluating claims at the pleading stage" pursuant to the "plausib[ility]" standard. Travelers Cas. Ins., 831 F.3d at 1183 (Kozinski, J., concurring); see Makaeff v. Trump Univ., LLC, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring) ("Newsham was a big mistake. Two other circuits [the First and Fifth] have foolishly followed it.").

In considering these subsequent decisions in other circuits, this Court agrees with Judge Kozinski--the argument that the anti-SLAPP statutes somehow do not "test the sufficiency of the complaint[,]" while Rule 12(b)(6) does, is simply not persuasive. Godin v. Schencks, 629 F.3d 79, 89 (1st Cir. 2010). In fact, the court in Henry v. Lack Charles American Press, LLC, 566 F.3d 164, 181

(5th Cir. 2009), simply assumed the applicability of Louisiana's anti-SLAPP statute in federal court without analysis of any kind, a decision upon which this Court cannot possibly base its own.

Instead, this Court has looked to Judge Kavanaugh's thorough analysis in Abbas v. Foreign Policy Group, LLC, 783 F.3d 1328 (D.C. Cir. 2015), and found it persuasive. Unlike the Fifth Circuit in Henry, Judge Kavanagh begins with an analysis of D.C.'s anti-SLAPP statute and whether it has any place in federal court; unlike the Ninth Circuit in Newsham, he applies the correct legal standard as elucidated by the Supreme Court in Shady Grove and Hanna. Id. at 1333. Finally, unlike the First Circuit in Godin, Judge Kavanaugh notes that while both the anti-SLAPP statute and Rule 12 "establish[] the circumstances under which a court must dismiss a plaintiff's claim before trial[,]" the Rule "do[es] not require a plaintiff to show a likelihood of success on the merits" in the manner demanded by the statute. Id. at 1333-34. In this way, he agrees with this Court that the two are in conflict and cannot co-exist; as in D.C., here, the Georgia anti-SLAPP statute impermissibly "set[s] up an additional hurdle a plaintiff must jump over to get to trial" in federal court. Id. at 1334.

Thus, because Rule 12(b)(6) both "answers the same question" as Section 9-11-11.1(b)(1) and is valid under the Rules Enabling Act and the United States Constitution, "[a] federal court exercising diversity jurisdiction . . . must apply" the federal rule on dismissal and not the special anti-SLAPP motion to strike provision. Abbas, 783 F.3d at 1337. CNN's motion to strike based on Georgia's anti-SLAPP law [Doc. 5] is DENIED. This also means that Plaintiff's

9

motion for additional discovery as to actual malice pursuant to Section 9-11-11.1(b)(2) [Doc. 9] is DISMISSED AS MOOT.

### III. MOTION TO DISMISS

The Court thus continues with CNN's alternative motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) [Doc. 5]. In ruling on the pending motion, all of the well-pleaded factual allegations in Plaintiff's Complaint must be accepted as true and construed in the light most favorable to him. Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008). Furthermore, when determining a motion to dismiss, the Court may consider attached documents central to Plaintiff's claims and referred to by Plaintiff without converting the motion to one for summary judgment. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and internal quotation marks omitted). More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above

10

the speculative level.'" <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting <u>Twombly</u>, 550 U.S. at 555).

### A.   Defamation Under Georgia Law

To establish a claim for defamation under Georgia law, "a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by defendant amounting to at least negligence; and (4) special damages or defamatory words 'injurious on their face.'" <u>Lewis v. Meredith Corp.</u>, 293 Ga. App. 747, 748 (Ga. Ct. App. 2008) (citation omitted). The second element is not at issue here, and neither truly is the fourth. Georgia law defines "defamatory words 'injurious on their face'" as "'charges against another in reference to his trade, office, or profession, calculated to injure him therein.'" <u>Infinite Energy, Inc. v. Pardue</u>, 310 Ga. App. 355, 357 (Ga. Ct. App. 2011) (quoting O.C.G.A. § 51-5-4(a)(3)). "'This type of defamation is actionable per se and damage is inferred.'" <u>Id.</u> (citing <u>Strange v. Henderson</u>, 223 Ga. App. 218, 219 (Ga. Ct. App. 1996)). In this case, Plaintiff is alleging that CNN's reporting directly impacted him in his professional capacity as CEO of St. Mary's. If proven, Plaintiff's allegations certainly allege defamation per se.

The real crux of the dispute between the parties lies with the first and third elements of defamation, which may be evaluated via three questions: (1) does Plaintiff's Complaint indicate that he can meet his burden to establish the falsity of CNN's report, (2) was that reporting about and pertaining to Plaintiff himself, and (3) can Plaintiff establish CNN's fault to the requisite degree? The Court will address each of these questions in turn. In doing so, it will

11

consider the various CNN reports attached to Plaintiff's response, as well as any documents specifically referenced in the text of his Complaint, because they are "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999)). The Court will not consider any extraneous affidavits or declarations improperly before it.

### B. False Reporting

In a case such as this, which "involves a speech of public concern, a plaintiff must show that . . . the defamatory statement was false." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1298 (11th Cir. 2008) (citing Mathis v. Cannon, 276 Ga. 16, 21 (Ga. 2002)). "'Georgia law puts the burden of proving falsity on the plaintiff,'" id. (quoting Straw v. Chase Revel, Inc., 813 F.2d 356, 361 n.6 (11th Cir. 1987)), and "'[t]ruth is an absolute defense[,]'" Monge v. Madison Cty. Record, Inc., 802 F. Supp. 2d 1327, 1333 (11th Cir. 2011) (quoting Wolf v. Ramsey, 253 F. Supp. 2d 1323, 1349 (N.D. Ga. 2003) (Carnes, J.)). However, to determine falsity, the Court must consider the publication as a whole, "'read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it.'" Lucas v. Cranshaw, 289 Ga. App. 510, 513 (Ga. Ct. App. 2008) (citations omitted). Facts that are "misstated, distorted or arranged so as to convey a false and defamatory meaning" give rise to liability, and in a close case, this question is one for the jury. Id. at 512-13.

As a preliminary matter, the Court notes that Plaintiff's pleading as a whole does include a number of non-actionable statements. "'Georgia law unquestionably excludes from defamation

12

liability any statements that . . . are clearly recognizable as pure opinion because their factual premises are revealed.'" Monge, 802 F. Supp. at 1335 (citation omitted). Plaintiff bases his defamation claim on a number of opinions, including statements from upset parents, statements that St. Mary's was "extremely inexperienced at doing such complicated heart surgeries on newborns[,]" and CNN's alleged reliance on "biased sources" [Compl., Doc. 1 at 12, 13, 18, 19, 20]. These statements are generally a matter of opinion and cannot be proven true or false for purposes of a defamation claim.

Perhaps recognizing this problem, Plaintiff's actual pleading appears to rest on two chief allegations. First, CNN admits that it used raw data to calculate St. Mary's "mortality rate" as 12.5%, "three times the national average" [Id. at 24]. Plaintiff does not dispute the raw numbers, but instead alleges that CNN "misstated, distorted or arranged [this data] so as to convey a false and defamatory meaning." Lucas, 289 Ga. App. at 512. The problem with CNN's headlines was allegedly that the 12.5% rate was not risk-adjusted, while the "national average" from the Society of Thoracic Surgeons ("STS") was. Furthermore, CNN allegedly calculated its rate using only open-heart surgeries at St. Mary's, while the "national average" was based upon both open- and closed-heart surgeries [Compl., Doc. 1 at 25-30]. Plaintiff insists that CNN was thereby doing an "apples-to-oranges comparison," which gave the average viewer an inaccurate perception. Plaintiff further alleges that CNN "doubled-down" on these assertions, even after St. Mary's drew its attention to the inaccuracy based upon publications by the STS itself [Id. at 32].

13

CNN counters by pointing to the raw data, that between 2011 and 2013 St. Mary's conducted forty-eight pediatric open-heart surgeries, of which six were fatal [Doc. 5-1 at 10-11]. The problem is that Plaintiff is not disputing the numbers; he is disputing the manner in which CNN used them as a comparison. CNN further responds by pointing to its own, supposedly erroneous reporting to support its assertion that both sets of statistics were for open-heart surgery and were not risk-adjusted [Id. at 12]. The dispute is precisely whether this was factually the case, however, and CNN's reports therefore cannot support a motion to dismiss. CNN finally argues that this is simply an academic disagreement over statistical methodology [Id. at 23]. Plaintiff is not, however, disputing how CNN did the math, but rather whether it compared its own math to a non-comparable figure in a way that misled its viewers. Drawing all inferences in favor of Plaintiff, he has met his burden on the falsity of CNN's numbers for purposes of a motion to dismiss.

The second potential basis for a defamation claim is CNN's statements that Florida's Agency for Health Care Administration ("AHCA") opened an investigation into St. Mary's as a result of its reporting. Quite to the contrary, Plaintiff alleges that AHCA issued a public statement "setting the record straight" as to CNN's assertions in which it stated that it had conducted normal oversight operations, but that it was "not investigating" St. Mary's [Compl., Doc. 1 at 31-32]. Nevertheless, CNN allegedly continued reporting that an investigation was on-going.

CNN counters that the Fair Report Privilege, which protects "proceedings of, and fair, impartial, and accurate news accounts of, administrative agencies of the government[]" should protect it. See

14

Doc. 19 at 23; Lawton v. Ga. Television Co., 216 Ga. App. 768, 771 (Ga. Ct. App. 1995). Given that there was allegedly no such investigation, it would be difficult to apply a privilege to a non-existent proceeding. Furthermore, actual malice, as discussed further below and as evidenced by CNN's continued publication about an official investigation when the AHCA had affirmatively stated that none existed, generally overrules the privilege. See Lawton, 216 Ga. at 771 (applying privilege in part because "no allegation of actual malice" existed). Again drawing all inferences in favor of Plaintiff, he has met his burden on the falsity of CNN's reports on Florida's investigation for purposes of a motion to dismiss.

This is not to say that the question of falsity is not a close one here. Consistent with Georgia law, however, when an allegedly defamatory statement "is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury [and not the judge] to say, under all the circumstances surrounding its publication . . . which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." Lucas, 289 Ga. App. at 513.

### C. About Plaintiff

"To sustain an action for libel, '[t]he [allegedly] defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.'" Fiske v. Stockton, 171 Ga. App. 601, 602 (Ga. Ct. App. 1984) (quoting Ledger-Enquirer Co. v. Brown, 214 Ga. 422, 423 (Ga. 1958)). Neither party here disputes that the various statements contained in the Complaint never mention Plaintiff by name. Nevertheless, Plaintiff is alleging that the nature of

CNN's negative reporting about St. Mary's was sufficient to defame him. For purposes of a motion to dismiss, the Court agrees.

Plaintiff alleges that he was well-known in his community, his state, and his profession as the CEO of St. Mary's, responsible for its administration and for the hiring of the pediatric surgeon at the center of CNN's reporting [Compl., Doc. 1 at 6-8]. In the course of its reporting about the mortality rate at St. Mary's, CNN used Plaintiff's name and picture numerous times, and referred to him as its CEO. CNN also freely admits in its motion to dismiss that it reported the situation at St. Mary's as "not the failure of any one individual[,]" but "the failure of the entire team and system." [Doc. 5-1 at 15]. In further reporting the supposed "financial incentive for the hospital to do these surgeries[,]" CNN was directing its audience to look beyond the single named pediatric surgeon at St. Mary's and consider the culpability of the administration [Compl., Doc. 1 at 15].

By then naming Plaintiff as CEO and using his picture, CNN was literally making Plaintiff the face of that culpable administration. CNN even sent a team to Plaintiff's home early one morning, presumably to get a quote, and later ran a report: "After St. Mary's repeatedly denied requests for interviews, CNN approached Davide Carbone, the CEO of St. Mary's at his home. He shut the garage door without commenting." [Doc. 14-1 at 5]. It is permissible to plead defamation by innuendo. See <u>Southland Publ'g Co. v. Sewell</u>, 111 Ga. App. 803, 809 (Ga. Ct. App. 1965) (finding "defamatory publication" to be about plaintiff because he was co-owner of the named garage, "and was understood by the citizens of Forsyth County to be the 'Sewell' affiliated with that business, and . . . he was therefore

16

identified personally"). Drawing all inferences in favor of Plaintiff, he has sufficiently pled the first element of defamation.

### D. With Actual Malice

Finally, Georgia law requires that Plaintiff prove CNN's fault "amounting to at least negligence" in order to establish defamation. If Plaintiff is a private figure--as he appears to plead initially [Compl., Doc. 1 at 1]--he need only show that CNN acted with ordinary negligence. If Plaintiff is a public figure, however, he "must prove by clear and convincing evidence" that CNN "acted with actual malice." Infinite Energy, 310 Ga. App. at 358 (citing Mathis, 276 Ga. at 20-21(2)).

Plaintiff is clearly not a "general purpose public figure" because he cannot be said to be a "celebrity" whose name is a "'household word' whose ideas and actions the public in fact follows with great interest.'" Id. at 359 (citing Riddle v. Golden Isles Broad., 275 Ga. App. 701, 703(1) (Ga. 2005)). Nevertheless, Plaintiff does appear to plead that he should be considered a "limited purpose public figure" because "[t]hat [he] was the Chief Executive Officer of St. Mary's and responsible for its administration was well-known to the public in the West Palm Beach area and in the medical community in the State of Florida and beyond" [Compl., Doc. 1 at 6]. The Court need not decide at this stage whether Plaintiff is a private or limited purpose public figure, however, because he has sufficiently pled actual malice.

As a matter of constitutional law, actual malice is defined as publication with "'knowledge that [the allegedly defamatory statement] was false or with reckless disregard of whether it was false or not.'" Masson v. New Yorker Magazine, Inc., 501 U.S. 496,

17

510 (1991) (quoting <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279-80 (1964)). Plaintiff's Complaint is replete with statements that St. Mary's and others were bringing to CNN's attention the fact that the very society from which it was supposedly getting its data, the STS, was at the same time bestowing upon St. Mary's a two-star ranking given only to those programs with a mortality rate "within the expected range relative to the national average" [Compl., Doc. 1 at 33-34]. This fact should have raised doubts for CNN, particularly since it noted in its own June 9, 2015 article: "Bottom line: to calculate a mortality rate, you must know how many index operations were done, and we have no idea" [<u>Id.</u> at 34]. As noted above, the AHCA was allegedly also drawing CNN's attention to its reporting errors without effect [<u>Id.</u> at 31-32]. The Court finds these allegations sufficient to establish that CNN was acting recklessly with regard to the accuracy of its reporting, i.e., with "actual malice." Plaintiff has sufficiently pled the third element of defamation.

Therefore, drawing all inferences in favor of Plaintiff, he has met the pleading standard to maintain a claim for defamation under Georgia law.

## IV.  CONCLUSION

For the reasons stated above, CNN's motion to strike or in the alternative dismiss [Doc. 5] is DENIED. Plaintiff's motion for discovery pursuant to Georgia's anti-SLAPP statute [Doc. 9] is DISMISSED AS MOOT.

SO ORDERED, this 14 day of February, 2017.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE